HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

BILAL A. ESSAYLI (Sate Bar No. 273441)
bessayli@essaylibrown.com
D. ANDREW BROWN (State Bar No. 273430)
abrown@essaylibrown.com
ESSAYLI & BROWN LLP
100 Bayview Circle, Suite 100
Newport Beach, California 92660
Telephone: 949.508.2980
Facsimile: 949.508.2981

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **KEVIN MULDOON**, in his individual capacity<br><br>      Plaintiff,<br><br>    vs.<br><br>**GAVIN NEWSOM**, in his official capacity as the Governor of California; **XAVIER BECERRA**, in his official capacity as the Attorney General of | Case No.: _____<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1  California; **MARK GHILARDUCCI**,
2  in his official capacity as the Director,
   Governor's Office of Emergency
3  Services; and **WADE CROWFOOT**,
4  in his official capacity as the Secretary,
   California Natural Resources Agency;
5
6          Defendants.
7
8
9          Plaintiff Kevin Muldoon, through his attorneys, Dhillon Law Group, Inc. and
10 Essayli & Brown LLP, brings claims against Gavin Newsom, in his official capacity
11 as the Governor of California; Xavier Becerra, in his official capacity as the
12 Attorney General of California; Mark Ghilarducci, in his official capacity as the
13 Director, Governor's Office of Emergency Services; and Wade Crowfoot, in his
14 official capacity as the Secretary, California Natural Resources Agency. Plaintiff
15 alleges and shows the Court as follows (this "Complaint").
16         1.      On April 27, 2020, Attorney General William Barr sent a memorandum
17 to all United States Attorneys regarding civil rights violations occurring in various
18 states during the coronavirus crisis.[1]
19         2.      Attorney General Barr stated that "the Constitution is not suspended in
20 times of crisis."
21         3.      In his memorandum, Attorney General Barr directs all United States
22 Attorneys to identify state directives that could be violating the Constitutional rights
23 and civil liberties of individual citizens. Attorney General Barr then directs that:
24
25
26
27 [1] As of May 3, 2020, accessible at: https://cdn.cnsnews.com/attachment/ag_memo_-_balancing_public_safety_with_the_preservation_of_civil_rights_0.pdf
28

DocuSign Envelope ID: 0BBF16B2-807D-434B-9CAB-652CD447260D

1    If a state or local ordinance crosses the line from an appropriate

2    exercise of authority to stop the spread of COVID-19 into an

3    overbearing infringement of constitutional and statutory protections, the

4    Department of Justice may have an obligation to address that overreach

5    in federal court.

6        4.     This lawsuit is filed to challenge the very type of overbearing

7    infringement of constitutional and statutory protections identified by Attorney

8    General Barr.

9    **NATURE OF ACTION**

10       5.     Defendants have abused their power by seizing on the coronavirus

11   pandemic to expand their authority to unprecedented lengths. On March 19, 2020,

12   Governor Gavin Newsom issued Executive Order N-33-20 (the "State Order"),

13   which directs all residents to heed current State public health directives. A copy of

14   the State Order is attached as Exhibit 1.

15       6.     On April 30, 2020, Governor Newsom issued a letter though the

16   California Governor's Office of Emergency Services directing all county and city

17   beaches within Orange County to close beginning May 1, 2020 (the "Governor's

18   Directive"). The only legal authority cited in the letter was a reference to the State

19   Order.  A copy of the Governor's Directive is attached as Exhibit 2.

20       7.     By depriving Plaintiff of his ability to access and enjoy the beach,

21   Defendants violate fundamental rights protected by the U.S. and California

22   Constitutions, including freedom to travel, freedom to assemble, and due process

23   and equal protection under the law, as well as constitutionally protected liberty

24   rights and rights to access California's beaches. It is this Court's duty to defend

25   these constitutional principles, by safeguarding the many rights and liberties of

26   Californians that Defendants violate.

27

28

---

Complaint                            3                          Case No.

DocuSign Envelope ID: 0BBF16B2-807D-434B-9CAB-652CD447260D

8.      Beginning on May 1, 2020, Defendants began enforcement of the Governor's Directive denying Plaintiff access and enjoyment of the beach.

9.      The Governor's Directive and Defendant's enforcement thereof violates (I) the Freedom to Travel; (II) the Due Process of Clause of the Fourteenth Amendment; (III) the Equal Protection Clause of the Fourteenth Amendment; (IV) the Freedom of Assembly Clause of the First Amendment; (V) California Constitution Article 10, Sections 4 and 5 Right to Access Navigable Waters; and (VI) California Constitution Article 1, Section 1 Right to Liberty.

10.     Defendants have shown by their actions a willingness to ignore and to violate the fundamental civil rights of California residents. Their actions described below are persistent and capable of repetition unless they are enjoined by this Court.

## JURISDICTION AND VENUE

11.     This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiff's constitutional rights to freedom to travel, freedom to assembly, due process, and equal protection rights under the First and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

12.     The Central District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants maintain offices, exercise their authority in their official capacities, and will enforce the Orders; and it is the District in which substantially all of the events giving rise to the claims occurred.

**PARTIES**

13.     Plaintiff Kevin Muldoon is a resident of Newport Beach, California. He is the former Mayor and current Councilman for the City of Newport Beach. Muldoon is filing this suit in his individual capacity. He has been an active and vocal proponent of Orange County's removing restrictions on the people and allowing the community to reopening due to a lack of scientific data that Orange County had any serious problem with COVID-19.

14.     Defendant Gavin Newsom is made a party to this Action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom issued the directive to close all Orange County beaches.

15.     Defendant Xavier Becerra is made a party to this Action in his official capacity as the Attorney General of California. Under California law he is the chief law enforcement officer with supervision over all sheriffs in the state. Cal. Const. Art. V, § 13.

16.     Defendant Mark Ghilarducci is made a party to this Action in his official capacity as the Director of the Governor's Office of Emergency Services. Director Ghilarducci issued the letter directing the closure of all Orange County beaches.

17.     Wade Crowfoot is made a party to this Action in his official capacity as the Secretary of the California Natural Resources Agency.

18.     Each and every Defendant acted under color of state law with respect to all acts or omissions herein alleged.

# FACTUAL ALLEGATIONS

19.     On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of a novel coronavirus, COVID-19.[2]

20.     Since the initial outbreak of COVID-19 in the United States in February and March 2020, the federal government's projections of the anticipated national death toll related to the virus has decreased substantially, by an order of magnitude. Despite such revisions, Defendants have increasingly restricted—where not outright banned— Plaintiff's engagement in constitutionally-protected activities.[3]

## FACTUAL ALLEGATIONS AS TO THE STATE OF CALIFORNIA

21.     On or about March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency as a result of the threat of COVID-19.[4]

22.     On or about March 19, 2020, California Governor Newsom issued Executive Order N-33-20 in which he ordered "all residents are directed to immediately heed the current State public health directives."

---

[2] As of the date of this filing, the Proclamation of a National Emergency can be found online at: https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[3] *See, e.g.*, https://www.usatoday.com/story/news/investigations/2020/04/09/coronavirus-deaths-u-s-could-closer-60-k-new-model-shows/5122467002/

[4] As of the date of this filing, the Proclamation of a State of Emergency can be found online at: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.

23.     The state public health directive requires "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors …".[5]

**GOVERNOR NEWSOM CLOSES ORANGE COUNTY BEACHES**

24.     Beginning on April 25, 2020, a string of newspapers published articles, alleging that Southern California beaches were packed with large masses of individuals flouting CDC guidelines.[6]  Photographs taken from a ground level viewpoint, using zoom lenses that artificially compress perspective, seemingly showed beachgoers tightly packed together on Newport Beach.[7] These photographs were misleading, at best.

25.     On April 28, Plaintiff requested several aerial photographs taken on the same day that the newspaper photographs were taken.[8] The aerial photographs showed far more space between beachgoers than the latter implied. Plaintiff also showed testimonials from fire chief and police chief, expressing their praise at those on Newport Beach for abiding by guidelines.[9] Charts also were produced that showed statistics comparing peak crowds at Newport Beach on July 4, 2019, with

---

[5]The State Public Health Directive was included in the text of Executive Order N-33-20.

[6] *See e.g.*, https://www.ocregister.com/2020/04/25/eager-early-risers-hit-the-beach-in-san-clemente-as-closure-lifts/; and https://www.mercurynews.com/2020/04/26/eager-early-risers-hit-the-beach-in-san-clemente-as-closure-lifts/.

[7] *See*, headline photograph at *supra*, n. 9, 10.

[8] Available as of May 3, 2020 at 1:23:46-1:28:48, http://newportbeach.granicus.com/MediaPlayer.php?view_id=44&clip_id=3477.

[9] *See Official Statement of Newport Police Chief Jon Lewis*, accessible as of May 1, 2020 at: https://www.newportbeachca.gov/Home/Components/News/News/38170/2720.

---

the number of people on the beaches on April 25, 2020, the day that was the subject of the aforementioned articles. [10]  The recent beach numbers were less than one-third what they were last Fourth of July.

26.     Data was produced that showed a comparison of the per-capita number of COVID-19 cases in surrounding beach communities that had closed their public beaches versus the ones that had stayed open, such as Newport Beach.[11] The cities with closed beaches—Malibu, Manhattan Beach, Santa Monica, Redondo Beach, Venice Beach, Long Beach, Hermosa Beach, Marina Del Ray—had higher confirmed COVID-19 cases (all more than 116 per 100,000, some more than 200 per 100,000) than the ones with open beaches—Dana Point, 68.22 per 100,000, San Clemente, 68.80 per 100,000, Huntingdon Beach, 88.93 per 100,000, Newport Beach, 107.82 per 100,000.[12]

27.     On the evening of April 29, 2020, a memorandum—stating that Governor Newsom would shut down all state beaches and state parks throughout the entire state of California—was sent to all the police chiefs in California, and subsequently leaked to the media. Eric Nunez, president of the California Police Chiefs Association, said it was sent to give chiefs time to plan ahead of Newsom's expected announcement April 30.[13]

28.     On information and belief, Governor Newsom's office did not send a similar memo to a single mayor, city council member or supervisor of a California city, township, or municipality. The communique effectively bypassed all local

---

[10] *Id*. at 15:01-29.

[11] *Id*. 18:28-19:57.

[12] *Id*.

[13] This article was accessible, as of May 3, 2020, at: https://www.kpbs.org/news/2020/apr/29/gov-newsom-order-all-beaches-closed-memo-police-ch/.

authorities. It reached out to local law enforcement only to ready a closure of public spaces while not conferring with or obtaining the blessing of local authorities.

29.     On April 30, 2020, Governor Newsom stated that he was unaware of the memorandum, and claimed that he had "never saw it."[14] The same day, Governor Newsom ordered that all beaches in Orange County be shut down, banned to the public. Beaches in other coastal communities that have chosen to allow them to stay open, were not similarly ordered to be shut down.

**NO RATIONAL SCIENTIFIC BASIS FOR THE BEACH CLOSURES**

30.     On April 27, 2020, a revised study released by a team at Stanford University estimated that, based on antibody tests of 3,300 people, as much as 4.16% of Santa Clara County's population (81,000 people), had already contracted COVID-19 by April 3 and 4, 2020.[15] Santa Clara had 39 deaths as of April 4, 2020[16] out of a county population of 1,927,852.[17] This means that the death rate of those who had COVID-19 is .048%.

31.     On April 10, 2020, Los Angeles County had 8,430 confirmed cases 241 deaths;[18] on April 11, 2020, Los Angeles County had 8,873 cases and 265 deaths,

---

[14] Available as of May 3, 2020 at: https://www.cnn.com/travel/article/california-newsom-close-beaches-parks/index.html.

[15] As of May 3, 2020, accessible at: https://www.medrxiv.org/content/10.1101/2020.04.14.20062463v2.full.pdf.

[16] As of May 3, 2020, accessible at: https://www.santaclaraca.gov/i-want-to/stay-informed/newsroom/coronavirus-updates/archived-covid-19-news-updates.

[17] https://www.census.gov/quickfacts/fact/table/santaclaracountycalifornia/PST045219

[18] As of May 3, 2020, accessible at: http://publichealth.lacounty.gov/phcommon/public/media/mediapubdetail.cfm?unit=media&ou=ph&prog=media&prid=2309.

---

DocuSign Envelope ID: 0BBF16B2-807D-434B-9CAB-652CD447260D

for an approximate death rate of 2.98 percent.[19] On April 20, 2020, the preliminary results of a collaborative antibody study done between the University of South California and the Public Health Department of Los Angeles County were released. Based on 863 tests, researchers estimated that as many as 5.6 percent of the L.A. County's population, or 442,000, already had COVID-19 on April 10 and 11.[20]

32. A similar antibody test in and by New York City showed that 21 percent of the population (1,763,737) were infected with COVID-19.[21] With the current number of confirmed deaths (12,571),[22] the putative death rate is 0.71 percent.

33. A similar antibody study by Miami-Dade County told a similar story: the confirmed number of deaths (1,268)[23] divided by the estimated number of infections (221,000)[24] gave a putative death rate of .57 percent. Each of these studies indicates that the COVID-19 mortality rate falls significantly short of those

---

[19] As of May 3, 2020, accessible at:
http://publichealth.lacounty.gov/phcommon/public/media/mediapubdetail.cfm?unit=media&ou=ph&prog=media&prid=2311.

[20] As of May 3, 2020, accessible at:
http://www.publichealth.lacounty.gov/phcommon/public/media/mediapubhpdetail.cfm?prid=2328.

[21] As of May 3, 2020, accessible at:
https://www.nytimes.com/2020/04/23/nyregion/coronavirus-antibodies-test-ny.html. The estimated population of NYC is 8,398,748 as of July 1, 2018 per https://www.census.gov/quickfacts/newyorkcitynewyork.

[22] As of May 3, 2020, accessible at: https://www1.nyc.gov/site/doh/covid/covid-19-data.page.

[23] As of May 3, 2020, accessible at:
https://www.miamiherald.com/news/coronavirus/article242395581.html.

[24] As of May 3, 2020, accessible at: https://www.miamidade.gov/releases/2020-04-24-sample-testing-results.asp.

associated with other epidemics, including the 1917-1918 Spanish Flu, believed to have caused at least 2.5 percent of the infected to die.[25]

34.     Studies and health data show that the closure of public beaches would not only be of no benefit to preventing the transmission of COVID-19 or death from it—it could actually be detrimental to such efforts.

35.     First, open air and sunlight (whether the mechanism of action is UV radiation or thermal energy) reduce the likelihood of transmission; the open air seemingly dissipates viruses to a negligible amount,[26] while sunlight lessens the lifetime of an infectious, viral particle.[27] [28] A study, conducted by Chinese scientists on COVID-19 clusters in Wuhan, showed that outdoor transmissions were few and rare.[29] A study on the physical-chemical structure of the SARS virus, a virus in the same family of coronaviruses as COVID-19 virus, showed that prolonged exposure to UV radiation resulted in the destruction of viral particles.[30] A Department of Homeland Security official revealed that the preliminary results from a study showed that sunlight and high temperatures could destroy a COVID-19 viral particle within minutes.[31]

---

[25] As of May 3, 2020, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3291398/.

[26] As of May 3, 2020, accessible at: https://www.medrxiv.org/content/10.1101/2020.04.04.20053058v1.

[27] As of May 3, 2020, accessible at: https://www.sciencedirect.com/science/article/pii/S016609340400179X (similar coronavirus, the one that causes the SARS outbreak, is vulnerable to UV radiation).

[28] As of May 3, 2020, accessible at: https://www.newsweek.com/sunlight-kills-coronavirus-scientist-1500012.

[29] *See*, *supra*, n.35.

[30] *See*, *supra*, n.36.

[31] As of May 3, 2020, accessible at: https://www.reuters.com/article/us-health-
(footnote continued)

---

36.     Second, COVID-19 seems to most severely affect those with underlying medical issues. The lack of access to fresh air, sunlight, exercise and social companionship (even from six feet away) can be detrimental, if not downright deadly, to the physical and psychological health of people.[32] Substance abuse relapse, lower immune system response, and higher risks for other medical conditions leaves one more vulnerable to COVID-19 transmission, infection, and death.[33]

37.     Third, Southern California cities with closed beaches—Malibu, Manhattan Beach, Santa Monica, Redondo Beach, Venice Beach, Long Beach, Hermosa Beach, Marina Del Ray—had *higher* confirmed COVID-19 cases (all more than 116 per 100,000, some more than 200 per 100,000) than the ones with open beaches—Dana Point, 68.22 per 100,000, San Clemente, 68.80 per 100,000, Huntingdon Beach, 88.93 per 100,000, Newport Beach, 107.82 per 100,000.[34]

38.     Finally, official health bodies do not recommend the closure of public spaces and or the implementation of major, internal travel restrictions. For example, the CDC's official mitigation guidelines for COVID-19 make no mention of closing public parks or breaches.[35] WHO and European CDC guidelines also advise against

---

coronavirus-trump/sunlight-heat-and-humidity-weaken-coronavirus-u-s-official-says-idUSKCN2253SA.

[32] City Council meeting with video showing discussions with doctors at Hoag Hospital about observing increase in at 11:55-12:10, available as of May 3, 2020 at: http://newportbeach.granicus.com/MediaPlayer.php?view_id=44&clip_id=3477.

[33] As of May 3, 2020, accessible at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

[34] *See* chart, available as of May 3, 2020 at 18:28-19:57, http://newportbeach.granicus.com/MediaPlayer.php?view_id=44&clip_id=3477.

[35] As of May 1, 2020, accessible at: https://www.cdc.gov/coronavirus/2019-ncov/downloads/community-mitigation-strategy.pdf.

"internal travel restrictions" during a pandemic because they have little effect on reducing transmission, while imposing huge social and economic costs.[36]

### ORANGE COUNTY HAS A LOWER COVID-19 DEATH RATE THAN
### COUNTIES THAT WERE NOT REQURIED
### TO SHUT DOWN THEIR BEACHES

39.     As of May 3, 2020, there were a total of 65,735 deaths[37] in the United States out of a total population of 328,239,523.  Based on these numbers, the United States' actual death rate due to COVID-19 is approximately .0200 percent (or 1 for every 4,993).

40.     As of May 3, 2020, there were a total of 1,229 deaths in Los Angeles County[38] out of a total population of 10,039,107. Based on these numbers, the Los Angeles County's actual death rate due to COVID-19 is approximately .0122 percent (or 1 for every 8,168).

---

[36] "There is limited evidence for the effectiveness of internal travel restrictions, and it has legal, ethical and economic implications. Although 37% of national pandemic preparedness plans of Member States have travel restriction plans as a component of NPIs (65), the acceptability is still undetermined." World Health Organization, *Non-pharmaceutical public health measures for mitigating the risk and impact of epidemic and pandemic influenza*, at p. 71, accessible as of May 1, 2020 at: https://apps.who.int/iris/bitstream/handle/10665/329438/9789241516839-eng.pdf?ua=1; *see also* European Centre for Disease Prevention and Control, *Public Health Measures for Influenza Pandemics*, p. 9, § 12 ("Internal travel restrictions [have] minor delaying effect[s and] [m]assive [costs and risks], including social disruption.").

[37] As of May 3, 2020, accessible at: https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

[38] As of May 3, 2020, accessible at: http://www.publichealth.lacounty.gov/media/Coronavirus/

---

41.     As of May 3, 2020, there were a total of 2,215 deaths[39] in California out of a total population of 39,512,223.  Based on these numbers, the California's actual death rate due to COVID-19 is approximately .0056 percent (or 1 for every 17,838).

42.     As of May 3, 2020, there was a total of 138 coronavirus deaths in San Diego County[40] out of a total population of 3,338,330. Based on these numbers, the San Diego County's actual death rate as a result of COVID-19 is approximately .0041 percent (or 1 for every 24,190).

43.     As of May 3, 2020, there was a total of 19 coronavirus deaths[41] in Ventura County out of a total population of 846,006. Based on these numbers, the Ventura County's actual death rate as a result of COVID-19 is approximately .0022 percent (or 1 for every 44,527).

44.     As of May 3, 2020, there was a total of 52 deaths in Orange County[42] out of a total population of 3,175,692. Based on these numbers, the Orange County's actual death rate as a result of COVID-19 is approximately .0016 percent (or 1 for every 61,071).

**CLAIMS**

**FIRST CLAIM FOR RELIEF**

**Violation of the Right to Travel**

**(42 U.S.C. § 1983)**

---

[39] As of May 3, 2020, accessible at: https://covid19.ca.gov/

[40] As of May 3, 2020, accessible at: https://www.arcgis.com/apps/opsdashboard/index.html#/96feda77f12f46638b984fcb1d17bd24

[41] As of May 3, 2020, accessible at: https://www.vcemergency.com/

[42] As of May 3, 2020, accessible at: https://occovid19.ochealthinfo.com/coronavirus-in-oc

**(Against all Defendants)**

45.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

46.     Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2597 (2015). In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. *Id*. at 2597.

47.     The Supreme Court has acknowledged the right to travel as a fundamental constitutional liberty protected by the Due Process Clause.  The "right to travel is a part of the liberty of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 126(1958). "It may be as close to the heart of the individual as choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values." *Kent*, 357 U.S. at 126. The "right to travel is an unconditional personal right, a right whose exercise may not be conditioned." *Dunn v. Blumstein*, 405 U.S. 330, 341 (1972). The "[f]reedom of movement is kin to the right of assembly and to the right of association. These rights may not be abridged." *Aptheker v. Secretary of State*, 378 U.S. 500, 520 (1964).

48.     The Governor's Directive and Defendants' enforcement thereof violates Plaintiff's right to freely travel to and at the beach in violation of his fundamental right to move freely, in violation of the Due Process Clause of the Fourteenth Amendment.

49.     When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government

DocuSign Envelope ID: 0BBF16B2-807D-434B-9CAB-652CD447260D

purpose and, even then, only if no less restrictive alternative is available. *See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

50.     Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above, and because less restrictive measures are available to the Defendants to accomplish their stated objectives.

51.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Governor's Directive.

52.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Governor's Directive.

53.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

///

## SECOND CLAIM FOR RELIEF
### Equal Protection Clause of Fourteenth Amendment to U.S. Constitution
### (42 U.S.C. § 1983)
### (Against all Defendants)

54.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

DocuSign Envelope ID: 0BBF16B2-807D-434R-9CAB-652CD447260D

55.     The Governor's Directive and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as-applied to Plaintiff. The Fourteenth Amendment of the Constitution provides that "[n]o State shall …deny to any person within its jurisdiction the equal protection of the laws." Equal protection requires the state to govern impartially—not draw arbitrary distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objection – such as whether they reside in one county or an adjoining county with similar characteristics.

56.     Defendants intentionally and arbitrarily singled out Orange County beaches for complete state government mandated closure, thereby depriving Plaintiff, a resident of Orange County, access to the beach, a unique and valued place for travel, recreation, assembly and leisure.

57.     Orange County has an effective COVID-19 death rate of 1 per 61,071 yet their beaches have been closed starting May 1, 2020 due to Governor Newsom's Order, yet just across the county boundary, there are open public beaches in San Diego County where the COVID-19 death rate is 1 per 24,190, or 2.5 times greater death rate.

58.     While Orange County Beaches are closed, beaches in Ventura County are open even though Ventura County has a slightly higher COVID-19 death rate than Orange County.

59.     Defendants' beach shutdown order cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

60.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Governor's Directive.

---

Complaint                                  17                              Case No.

61.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Governor's Directive.

62.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

### Violation of First Amendment Freedom of Assembly Clause

### (42 U.S.C. § 1983)

### (Against all Defendants)

63.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

64.     The Governor's Directive and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiff. The First Amendment of the Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937).

65.     By denying Plaintiff and all citizens of California the right to peaceably assemble on the beaches of Orange County, whether to protest or otherwise express themselves, Defendants are infringing on the Freedom of Assembly Clause.

66.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Governor's Directive.

67.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Governor's Directive.

DocuSign Envelope ID: 0BBF16B2-807D-434R-9CAB-652CD447260D

68.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

### Right to Access Navigable Waters

### (Cal. Const. Art. 10, §§ 4, 5)

### (Against all Defendants)

69.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

70.     Californians have a state constitutional interest in the use and enjoyment of the coastline. Courts have recognized the California Constitution expresses a strong public policy of encouraging public use of shoreline recreational areas. *Gion v. Santa Cruz*, 2 Cal.3d 29, 42 (1970). The California Supreme Court has acknowledged several legislative enactments that indicate the strong public policy in favor of according public access to the coast. Id.

71.     Preventing Plaintiff from accessing and enjoying the beach, despite the availability of less restrictive measures to satisfy the public health interests at stake, violates his California Constitutional right to access the states navigable waters.

72.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Governor's Directive.

73.     Plaintiff has found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff is therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## FIFTH CLAIM FOR RELIEF

### Right to Liberty

---

Complaint                                    19                                    Case No.

**(Cal. Const. Art. 1, § 1)**

**(Against all Defendants)**

74.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

75.     In California, "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy. Cal. Const. Art. 1, §1.

76.     California courts have held that Public Health Officials' authority over the rights of personal liberty is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." *Ex parte Martin*, 83 Cal. App. 2d 164 (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease …" Id.

77.     California courts found that Public Health Officials could not quarantine 12 blocks of San Francisco Chinatown because of nine (9) deaths due to bubonic plague. See *Jew Ho v. Williamson*, 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson*, 103 F. 1 (C.C. Cal. 1900).

78.     The court found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof, has or have existed". *Jew Ho*, 103 F. 10 (C.C. Cal. 1900).

79.     California courts have found that "a mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all for depriving persons of their liberty and subjecting

them to virtual imprisonment under a purported order of quarantine." *Ex parte Arta*, 52 Cal. App. 380, 383 (1921) (emphasis added).

80.     In *Jew Ho v. Williamson*, 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson*, 103 F. 1 (CC Cal. 1900), the California courts found that there were more than 15,000 people living in the twelve blocks of San Francisco Chinatown who were to be quarantined. The courts found it unreasonable to shut down the ability of over 15,000 people to make a living because of nine deaths. This was one death for every 1,666 inhabitants of Chinatown.

81.     Plaintiff has never had or contracted said coronavirus; he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said coronavirus, or any germs of bacteria thereof, has or have existed. Plaintiff may not be presumed to be infectious on the basis of the evidence available to Defendants, who bear the burden of proving a basis for restricting liberty rights.

82.     Preventing Plaintiff from accessing and enjoying the beach, despite the availability of less restrictive measures to satisfy the public health interests at stake, violates his California Constitutional right to liberty.

83.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Governor's Directive.

84.     Plaintiff has found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff is therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**WHEREFORE**, Plaintiff respectfully request that this Court enter judgment against Defendants as follows:

A.     An order and judgment declaring that the State Order, facially and as-applied to Plaintiff, violates the First and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 1, 4, and 5 of the California Constitution;

B.     An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the State Order or otherwise interfering with Plaintiff's ability to access and enjoy the beach;

C.     For attorneys' fees and costs pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure Section 1021.5, and any other legal basis for such fees and costs as may apply;

D.     Such other and further relief as the Court deems appropriate and just.


                                    Respectfully submitted,

Date: May 3, 2020                   DHILLON LAW GROUP INC.


                          By:   /s/ Harmeet K. Dhillon
                                Harmeet K. Dhillon
                                Mark P. Meuser
                                Gregory R. Michael

                                ESSAYLI & BROWN LLP
                                Bilal A. Essayli
                                D. Andrew Brown

                                Attorneys for Plaintiff

                    **VERIFICATION OF COMPLAINT**

          I, the undersigned, declare as follows:

1.     I am a plaintiff in this matter.

2.     I have read the foregoing complaint and know the contents thereof.

1      3.      The same is true of my own knowledge, except as to those matters

2   which are therein state on information and belief, and, as to those matters, I believe

3   it to be true.

4          I declare under penalty of perjury under the laws of the United States of

5   America that the foregoing is true and correct.

6

7   Date: <u>May 3, 2020</u>

Kevin Muldoon

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28